# IN THE COURT OF APPEALS OF IOWA

No. 14-1776
Filed March 11, 2015

**IN THE INTEREST OF C.D.,**
**Minor Child,**

**A.D., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Buchanan County, Alan D. Allbee, Associate Juvenile Judge.

The mother appeals the juvenile court's termination of her parental rights to her son, C.D. **AFFIRMED.**

A.J. Flickinger of Graig, Wilson & Flickinger, Independence, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Shawn M. Harden, County Attorney, and Michael S.A. Hudson, Assistant County Attorney, for appellee State.

James Peters, Independence, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's termination of her parental rights to her son, C.D. She asserts the State failed to prove grounds to terminate her rights under Iowa Code section 232.116(1)(e), (f), and (*l*) (2013). We conclude that due to the mother's incarceration and unresolved substance abuse issues C.D. cannot be returned to her care within the meaning of paragraph (f). Consequently, we affirm the termination of the mother's parental rights.

C.D., born March 2010, was in the care of the mother for the first two years of his life. On July 28, 2012, C.D. was removed from the mother's home because of her use of methamphetamine while parenting. He was adjudicated a child in need of assistance (CINA) on October 1, 2012. Upon removal, C.D. was initially placed with other family members, and then placed with his father on November 14, 2012, where he remained throughout the pendency of these proceedings. Initially, the father did not know C.D. was his son, and another man was listed on C.D.'s birth certificate as the biological father;[1] however, once the paternity test verified that C.D. was the father's son, the father expressed interest in retaining custody of C.D. At the time of C.D.'s removal, the father was living with the mother, but once it was established C.D. was not safe while in the care of the mother, the father moved out of the mother's residence. The father was

---

[1] In a dispositional order dated December 17, 2012, the juvenile court noted the father listed on C.D.'s birth certificate was not the biological father, and paternity testing had revealed the father (with whom C.D. is currently living) to be C.D.'s biological parent.

granted sole custody through a permanency order dated July 8, 2013,[2] and C.D. was never returned to the mother's care.

At the termination hearing, the DHS worker testified that following C.D.'s removal the mother was granted supervised visits. After making some progress with regard to mental health treatment, the visits were moved to monitored from the end of 2012 until the beginning of 2013. However, because the mother would abscond with C.D. without informing DHS workers where they were, the visits again became supervised. The mother last had contact with C.D. in June 2013. She requested that C.D. be brought to the prison but this never occurred. She has also written letters to C.D.

The mother was incarcerated in August 2013 following a conviction for conspiracy to manufacture methamphetamine, and in February 2014, she was sentenced to a term of twenty-five years imprisonment. The earliest date she will be eligible for parole is November 24, 2017. The conviction stems in part from the fact the mother had a methamphetamine lab at her home. The mother also has a conviction for manufacturing methamphetamine from 2004, and a conviction for criminal mischief in the second degree, which was imposed after she damaged the car of C.D.'s father in July 2013. She was also arrested for forgery by credit card, burglary, and identity theft in November 2013, after which her probation was revoked.

According to prison counselors, the mother confessed to using methamphetamine daily from late 2012 until January 2013. She has not sought

---

[2] In this order the juvenile court granted the father's motion for concurrent jurisdiction regarding custody of C.D., and further noted: "There exists no district court custody order concerning [C.D.] and his father wishes to seek such an order."

treatment for her addiction during the pendency of these proceedings.[3]  She is currently on the waiting list for the prison's inpatient substance abuse treatment program.  She last attended a narcotics anonymous meeting in 2004, and though the Iowa Department of Human Services offered her services so she could address her problem, she failed to take advantage of these programs prior to her arrest.

The State filed a petition to terminate the mother's parental rights on July 11, 2014, and the father and the guardian ad litem joined the petition.  A contested hearing was held on October 6, 2014, in which the mother testified by phone.  The juvenile court issued an order on October 10, 2014, terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (f), and (*l*).  The mother appeals.

We review termination proceedings de novo.  *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  The grounds for termination must be proved by clear and convincing evidence.  *Id.*  Our primary concern is the child's best interest.  *Id.*  When the juvenile court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the juvenile court to affirm.  *Id.*

To terminate the mother's parental rights under Iowa Code section 232.116(1)(f), the State was required to prove C.D. is four years of age or older,

---

[3] While incarcerated in federal prison in 2004, she completed a residential treatment program and, before C.D.'s birth, completed the Heart of Iowa inpatient substance abuse treatment program.  A substance abuse evaluation was obtained during the pendency of this proceeding, and the counselor noted the mother was dependent on methamphetamine and in the pre-contemplation stage of change.  Though the report recommended outpatient treatment, the mother did not attend any programs prior to her incarceration and was discharged unsuccessfully for failure to attend.

has been adjudicated CINA, has been removed from the mother's care for the last twelve consecutive months, and there is clear and convincing evidence that he cannot be returned to the mother's care, due to the potential of suffering adjudicatory harm.

We agree with the juvenile court the State established by clear and convincing evidence the grounds to terminate the mother's rights under paragraph (f). The mother continues to have ongoing substance abuse issues that have landed her in jail on a number of occasions. The earliest she will be eligible for release is 2017. The mother also has no insight into how her addiction affects C.D., which is demonstrated by the fact she continued to abuse methamphetamine following C.D.'s removal.[4] Moreover, though she contends she will be able to reestablish a relationship with C.D. following her release from prison, "[w]e have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). It is clearly in C.D.'s best interest that he achieve permanency, and given the mother's unresolved substance abuse issues, the record demonstrates C.D. would suffer harm if returned to the mother's care. Consequently, we affirm the order of the juvenile court terminating the mother's parental rights.

**AFFIRMED.**

---

[4] The mother has an older child who has suffered from the mother's past incarceration in federal prison, subsequent release, and her reengagement with the use and manufacturing of methamphetamine, for which she was again incarcerated.